# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
ANTHONY RAGUSA,                       *
                                      *     No. 14-32V
           Petitioner,                *
                                      *     Special Master Christian J. Moran
                                      *
v.                                    *
                                      *
SECRETARY OF HEALTH                   *     Filed: September 18, 2015
AND HUMAN SERVICES,                   *     Fact Finding; onset.
                                      *
           Respondent.                *
* * * * * * * * * * * * * * * * * * * *

Mark L. Krueger, Krueger & Hernandez, S.C., Baraboo, WI, for petitioner;
Justine E. Walters, United States Dep't of Justice, Washington, DC, for respondent.

## RULING FINDING FACTS[1]

The petitioner, Anthony Ragusa, alleges that an influenza vaccine caused him to suffer a neurologic disorder known as transverse myelitis. He seeks compensation pursuant to the National Childhood Vaccine Injury Compensation Program, 42 U.S.C. § 300aa–10 through 34 (2012).

Although the parties agree with the diagnosis of transverse myelitis, they disagree about when Mr. Ragusa first started to suffer symptoms associated with that disorder. To resolve these factual disputes, a hearing was held to receive testimony from percipient witnesses. See Campbell v. Sec'y of Health & Human Servs., 69 Fed. Cl. 775, 779-80 (2006). Mr. Ragusa and his mother, Betsy Drillon, testified. Following the submission of additional documentary evidence, the

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this ruling on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

parties proposed findings of fact.  With those submissions, the matter is ready for adjudication.

## Basic Chronology of Undisputed Facts

In 2010, Mr. Ragusa was working at the corporate headquarters of State Farm Insurance.  He also had been taking Paxil for approximately two years.

A few days before Thanksgiving, Mr. Ragusa developed problems in his upper respiratory tract.  Consequently, he did not celebrate Thanksgiving with his mother that year.  Tr. 75.  This was unusual because Mr. Ragusa and his mother had (and have) a relatively close relationship.

On November 30, 2010, Mr. Woods had an appointment with his primary care physician, Dr. Woods.  Exhibit 8 at 26.  The purpose of this appointment was to follow up on Mr. Ragusa's anxiety and depression.  Id. at 26.  Mr. Ragusa also told Dr. Woods about his "respiratory infection."  Id.  Dr. Woods increased the Paxil dosage to 60 mg a day.  Dr. Woods also administered a flu vaccine to Mr. Ragusa.  Id. at 27.

On Sunday, January 9, 2011, Mr. Ragusa traveled to Indianapolis, Indiana, where he stayed through January 13, 2011.  Exhibit 16 at 4-6.  He was working with focus groups for State Farm.  Tr. 61.

On Friday, January 14, 2011, Mr. Ragusa returned to Dr. Woods.  Exhibit 8 at 25.  Mr. Ragusa described several problems, which are discussed in more detail below.

On Sunday, January 16, 2011, Mr. Ragusa flew to Los Angeles, California, to conduct another focus group.  Exhibit 16 at 7; Tr. 61.  He returned on Friday, January 21, 2011.  Id.

On January 22, 2011, Mr. Ragusa went to an emergency room and then was admitted to a hospital.  His chief complaints were difficulty with urination, numbness, and pain.  During the hospitalization, Mr. Ragusa gave several histories about the symptoms and when the symptoms started.

Although the histories are not perfectly exact, they are relatively consistent about the main events.  Mr. Ragusa generally disagrees with these reports, preferring his recollection that his problems with urination started on January 16, 2011, when he was on a plane to California.  Pet'r's Proposed Findings, filed June

2

29, 2015, ¶ 13. Mr. Ragusa also recollects that his leg problems started a few hours later on a walk to his hotel from a location where the Golden Globes were being awarded. Id. ¶ 15.

This is the crux of the dispute: when did Mr. Ragusa experience problems with urination, numbness, and pain in his legs. Mr. Ragusa, as just stated, proposes January 16, 2011. Id. The Secretary, in contrast, proposes approximately two weeks earlier.[2] Resp't's Proposed Findings, filed Aug. 19, 2015, ¶ 8.

## Standards for Adjudication

The standards for resolving findings of fact are sufficiently established that they need not be repeated here. For a detailed account, see Bayless v. Sec'y of Health & Human Servs., No. 08-679V, 2015 WL 638197, at *2 (Fed. Cl. Spec. Mstr. Jan. 15, 2015).

## Analysis

Painful urination. Mr. Ragusa began having pain when urinating around January 4, 2011. Several records support this finding.

The most important record is the report to Dr. Woods on January 14, 2011. There, Dr. Woods indicates that Mr. Ragusa had "Dysuria for 1.5 weeks." Exhibit 8 at 25. This is a record created contemporaneously and Mr. Ragusa's history is presumably accurate. Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

In his oral testimony, Mr. Ragusa did very little to undermine the reliability of Dr. Woods's report. Mr. Ragusa denied using the term "dysuria," saying that in 2011, he did not know that dysuria means painful urination. Tr. 20. However, in the undersigned's experience, doctors often use specific medical terminology when a patient has used more common language.

In addition to Dr. Woods's January 14, 2011 report, another piece of evidence that supports finding Mr. Ragusa's painful urination started on January 4, 2011, is a report to a urologist, Dr. Leak. Dr. Leak saw Mr. Ragusa in the hospital. Dr. Leak was also the first doctor whom Mr. Ragusa saw after discharge. Exhibit

---

[2] The parties may also have a dispute about the duration of Mr. Ragusa's transverse myelitis. See Resp't's Proposed Findings, filed Aug. 19, 2015, ¶ 12-15. However, that issue is beyond the scope of this ruling.

9 at 2-5; Tr. 47.  In the context of seeing Dr. Leak in his office, Mr. Ragusa completed a "PATIENT HISTORY FORM" describing his problems.  Exhibit 9 at 2. The form included the question "When did you 1st notice the problem?" and provided three choices plus the category "other."  Id. at 2.  The three options were "2 days ago," "2 weeks ago," and "1 month ago."  Id.  Mr. Ragusa circled "1 month ago."  Id.  This answer indicates that the trouble urinating began approximately January 4, 2011.  If Mr. Ragusa's problems actually started around January 16, 2011, as he claims in this litigation, then Mr. Ragusa would have circled "2 weeks ago."

Dr. Woods's January 14, 2011 report (exhibit 8 at 26-27) and Dr. Leak's February 4, 2011 patient history form (exhibit 9 at 2-5) served as bookends to Mr. Ragusa's acute problem.  Both point to the same onset date: January 4, 2011.  Between those two bookends, Mr. Ragusa gave other histories about the onset of his problems and these are relatively consistent with this finding.

Numbness.  Mr. Ragusa started experiencing numbness around January 8, 2011.

In the hospital, Mr. Ragusa told a specialist in infectious diseases that after having urinary symptoms for several days, he began "to experience some pain from the hips down."  Exhibit 7 at 74.  At the emergency room, Mr. Ragusa reported that, "about 2 weeks ago he felt his feet getting numb or [a] different type of sensation and over the last 2 weeks and especially over the last couple of days, he had this numbness sensation extending up to his lower thoracic cavity region."  Id. at 87.

A potentially contradictory piece of evidence is Dr. Woods's January 14, 2011 report.  Exhibit 8 at 26-27.  Arguably, if Mr. Ragusa were experiencing numbness, he would have reported this problem to Dr. Woods.  Dr. Woods does not use the term "numbness."  But, Mr. Ragusa did tell Dr. Woods that he was experiencing "stiffness in legs."  Exhibit 8 at 26.  When asked about stiffness, Mr. Ragusa could not explain what he meant.  See Tr. 40.[3]  Under these circumstances,

---

[3] Mr. Ragusa suggested that he may have been sore from exercising at a CrossFit gym. However, documentary evidence later showed that Mr. Ragusa did not join this gym until later in 2011.  Exhibit 15 at 23-24.

Mr. Ragusa's recollection that he was a member of a CrossFit gym in January 2011, testimony that appeared to be given in good faith, illustrates the weakness of his memory.  Mr. Ragusa's oral testimony was not sufficiently clear, cogent, and compelling to overcome the

4

the report from Dr. Woods does not effectively undercut the reports from other doctors given only two weeks later.

<u>Pain in legs</u>.  Mr. Ragusa first started to experience pain in his legs on January 16, 2011.

The main support for this finding is a record from a telephone call that Mr. Ragusa made from California to Dr. Woods's office on January 19, 2011.  Tr. 51; Exhibit 19 at 1.[4]  Mr. Ragusa informed an assistant that "he's having 'excruciating' pain in legs, can hardly walk" and requested pain medication.   Exhibit 19 at 1.  Although this record does not contain any direct information about how long Mr. Ragusa was having this severe pain, it seems reasonable to infer that Mr. Ragusa endured some pain for some days because he told Dr. Woods's assistant that over the counter medications were not helping with his pain.

Additional information about the onset of pain comes from a January 23, 2011 report created by a neurologist.  Exhibit 7 at 67.  Dr. Dalal recorded that Mr. Ragusa "presented for [a] three-week history of worsening numbness and weakness in his extremities starting in the lower extremities and moving upward. He states over the past week the numbness has been accompanied by bilateral lower extremity pain."  <u>Id.</u>  If it is assumed that the phrase "the past week" means seven days, this report means that the pain started on January 16, 2011.

Mr. Ragusa, too, testified that the pain in his legs started on January 16, 2011. Tr. 21-23.  Because this testimony is corroborated by Dr. Dalal's contemporaneously created medical record, Mr. Ragusa's testimony can be credited.

## **Conclusion**

The parties are ordered to provide these findings of fact to any expert whom they have retained to testify.  Expert opinion inconsistent with these findings of fact is not likely to be persuasive.  <u>See</u> <u>Burns v. Sec'y of Health & Human Servs.</u>, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that the special master did not abuse his discretion in refraining from conducting a hearing when the petitioner's expert "based his opinion on facts not substantiated by the record"); <u>Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209, 242 (1993) ("When an expert

---

presumption that the medical records created in January 2011 accurately described his health that month.

    [4] The record from the telephone encounter was produced after the hearing.

opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1376 n.6 (Fed. Cir. 1994) ("An expert opinion is no better than the soundness of the reasons supporting it."); see also Bradley v. Sec'y of Health & Human Servs., 991 F.2d 1570, 1574 (Fed. Cir. 1993) (the assumption of an expert about the accuracy of a fact witness's testimony does not "substantiate" the fact witness's testimony).

A status conference is set, sua sponte, for **Tuesday, October 6, 2015 at 11:00 A.M Eastern Time**.  The parties should be prepared to propose the next step in this case.

Any questions may be directed to my law clerk, Shannon Proctor, at (202) 357-6360.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master
